**Florence HENRIE et al., Plaintiffs, and Dr. Sarah G. Allison, Ph.D., et al., Intervenors,**

**v.**

**The Honorable Larry DERRYBERRY, Attorney General of the State of Oklahoma, et al., Defendants.**

**Civ. A. No. 70–C–211.**

United States District Court,
N. D. Oklahoma.

April 2, 1973.

Pat Malloy, A. F. Ringold and Gene Mortenson, Tulsa, Okl., for plaintiffs and intervening plaintiffs.

Gary M. Bush, Asst. Atty. Gen. (Larry Derryberry, Atty. Gen. of Oklahoma, and Paul C. Duncan, Asst. Atty. Gen., with him on the briefs), for defendant Larry Derryberry.

Andrew B. Allen, Asst. Dist. Atty. for District 14, Tulsa, Okl. (S. M. Fallis, Jr., Dist. Atty. for District 14, Tulsa, Okl., with him on the brief), for defendant S. M. Fallis, Jr.

Ronald Stockwell, for defendant Frank Grayson, formerly District Attorney for District 13.

Sam Harris, Asst. Dist. Atty., in the County of Delaware, District 13, filed a supplemental brief.

Before HOLLOWAY, Circuit Judge, BARROW, Chief District Judge, and EUBANKS, District Judge.

HOLLOWAY, Circuit Judge.

## MEMORANDUM OPINION AND ORDER

This suit challenges the constitutionality of the Oklahoma criminal abortion statutes and related laws. We have withheld our decision pending the Supreme Court opinions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, decided on January 22, 1973.

Under these decisions we hold that the Oklahoma criminal abortion statutes appearing in 21 O.S.1971 §§ 861 and 862, prohibiting procuring an abortion and submitting to or soliciting one to attempt abortion, are unconstitutional under the Fourteenth Amendment and grant declaratory relief as to their invalidity. We deny injunctive relief, being satisfied that it is unnecessary and inappropriate.

We do not hold invalid the Oklahoma criminal statute prohibiting the procuring of destruction of an unborn quick child, 21 O.S.1971 § 714. Instead we feel there is a substantial possibility that the constitutionality of that statute may be preserved by an interpretation of it by the Oklahoma Courts which is permissible and in harmony with the Supreme Court decisions. In order that the State Courts may construe the State statute in the light of the recent Supreme Court decisions, we abstain from interpreting the statute and deciding its constitutionality.

Relief is sought against other statutes regulating professional conduct and declaring the procuring, aiding and abetting of a criminal abortion to be unprofessional. See 59 O.S.1971 §§ 503 and 509. Since the State Board and members thereof charged with enforcement of these statutes were not joined as parties, we conclude that there is no case or controversy between the parties before us concerning these statutes. Likewise we have no genuine case or controversy before us as to the validity of 21 O.S. 1971 §§ 713 or 863 which deal with wilful killing of a quick child by injury to the mother and concealing the stillbirth or death of a child. Accordingly, we grant no relief as to these statutes.

Following trial to the three-judge court convened to hear this suit under 28 U.S.C. § 2281 et seq., we determined that we should withhold our decision until the Supreme Court's opinions in the abortion cases were rendered. We stayed our decision and notified the parties of this determination. On consideration of those opinions and briefs which the parties have subsequently submitted concerning them, we now enter this memorandum opinion and order which will serve as our findings of fact and conclusions of law under Rule 52. F.R. Civ. P., and our judgment.

*The Parties, Standing and Justiciability*

1. *Intervenors Allison, Hladky and Wolf.* This suit was originally commenced by W. J. Bryan Henrie, D.O., now deceased, seeking declaratory and injunctive relief against enforcement of various Oklahoma abortion statutes. Shortly thereafter the court permitted Sarah Allison, John B. Wolf and Frank Hladky to intervene and join the challenge to the constitutionality of the Oklahoma abortion statutes, for themselves and for others similarly situated.

Dr. Allison is a psychologist employed by the Tulsa Guidance Clinic and Tulsa County Juvenile Court. Dr. Hladky is a practicing psychiatrist and is the Director of the Tulsa Psychiatric Foundation. Reverend Wolf is the Minister of the All Souls Unitarian Church at Tulsa. We earlier determined that these inter-

venors could properly maintain their claims as class actions on behalf of themselves and others similarly situated.

The proof of the intervenors showed that there were continuing requests to them for consultation, advice and counsel by women who are pregnant and for various and serious reasons are concerned about the advisability of bearing a child. Each of these parties desires to give advice on the possible option of abortion. Under the Oklahoma statutes restricting abortions, 21 O.S.1971 §§ 861 and 862, the giving of such advice would subject each of these three parties to a very serious risk of criminal prosecution in the event that such advice led to the procurement of an abortion. And in the case of Dr. Hladky, the giving of such advice might well lead to the loss of his license to practice medicine in Oklahoma. See 59 O.S.1971 §§ 503 and 509.

In asserting their challenges to 21 O.S.1971 §§ 714, 861 and 862, the intervenors have a direct threat of personal detriment sufficient to demonstrate standing. Doe v. Bolton, supra, 410 U.S. at 179, 93 S.Ct. 739; Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947. It is their interests that are presently at stake and not merely those of the general public. Moreover the dispute between the parties before us is presented in an adversary context and in a form historically viewed as capable of judicial resolution. Flast v. Cohen, supra at 101, 88 S.Ct. 1942. Therefore we are satisfied that these intervenors have presented the court with an actual case or controversy under Article III of the federal constitution as to §§ 714, 861 and 862. Doe v. Bolton, supra, 410 U.S. at 179, 93 S.Ct. 739; cf. Eisenstadt v. Baird, 405 U.S. 438, 443, 92 S.Ct. 1029, 31 L.Ed.2d 349.

■ We also believe these plaintiffs have demonstrated the proper standing to assert the rights of the pregnant women they wish to advise. The appropriate nexus is shown by the confidential relationship these intervenors share with the women they wish to counsel.

Unless the intervenors may assert such rights, the rights of all concerned may be diluted or adversely affected. Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510; see also Eisenstadt v. Baird, supra, 405 U.S. at 444–446, 92 S.Ct. 1029; Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131.

■ We turn to the justiciability of the challenges to 59 O.S.1971 §§ 503 and 509 regulating professional conduct. § 509 defines unprofessional conduct to include "procuring, aiding or abetting a criminal operation or abortion." Coupled with § 503, this statute would permit the Oklahoma Board of Medical Examiners to revoke or suspend the license or certificate to practice of any physician or surgeon engaging in such conduct.

However, the responsibility of enforcement of the statutes is given to the Board of Examiners. Since the Board and its members who enforce these statutes are not joined as parties, the challenge to §§ 503 and 509 is not presented in an adversary context or in a form historically viewed as capable of judicial resolution. Flast v. Cohen, supra, 392 U.S. at 101, 88 S.Ct. 1942. This dispute does not touch the legal relations of parties having the essential adverse legal interests for a justiciable controversy to be present. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617. Thus as to the challenge to the constitutionality of these statutes we do not have a proper case or controversy for federal jurisdiction under Article III. We conclude that we may not properly consider here the constitutionality of 59 O.S.1971 §§ 503 and 509.

2. *Dr. Henrie.* The original plaintiff in this suit was at one time an osteopathic physician licensed and practicing in Oklahoma. In 1962 he was convicted, apparently under 21 O.S.1971 § 861, of violating the Oklahoma criminal abortion laws. In addition to incarceration,

he suffered the loss of his license to practice osteopathy.

Dr. Henrie died subsequent to the trial on the merits. His counsel have moved for substitution of his successors, named in the caption, under Rule 25, F.R.Civ.P. The motion is unopposed and the substitution of his successors is ordered.

While pending criminal proceedings must be abated in the Federal courts upon the death of the defendant, Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200; Epps v. United States, 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542, this case involves a State conviction which became final before the defendant's death. This subsequent suit which Dr. Henrie instituted was collateral to his earlier State conviction that was already final. In such circumstances we feel that no injunctive or declaratory relief may be granted by this Federal court.

Declaratory judgments are not generally an appropriate means of attacking the validity of State convictions. See Shannon v. Sequeechi, 365 F.2d 827, 829 (10th Cir.), cert. denied, 386 U.S. 481, 87 S.Ct. 1175, 18 L.Ed.2d 225; Booker v. Arkansas, 380 F.2d 240, 242 (8th Cir.); Morton v. Avery, 393 F.2d 138 (6th Cir.), cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L.Ed.2d 172; United States ex rel. Bennett v. Illinois, 356 F.2d 878 (7th Cir.), cert. denied, 384 U.S. 946, 86 S.Ct. 1472, 16 L.Ed.2d 544; see also Sepulveda v. Colorado, 335 F.2d 581 (10th Cir.). Since Dr. Henrie was under no restraint by incarceration, parole or otherwise, see Jones v. Cunningham, 371 U.S. 236, 239–240, 83 S.Ct. 373, 9 L.Ed.2d 285, at the time the action was commenced, we feel that the suit may not be treated properly as one for habeas relief, even as now expanded.

See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554.

It is true that where a sentence has been served and the person is no longer subject to restraint, in compelling circumstances relief in the nature of coram nobis may be given. *E. g.,* United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248; Ward v. United States, 381 F.2d 14 (10th Cir.); see also Casias v. United States, 421 F.2d 1233 (10th Cir.). However, such relief must be sought in the court which imposed the sentence. See Thomas v. Cunningham, 335 F.2d 67, 69 (4th Cir.); Madigan v. Wells, 224 F.2d 577, 578 n. 2 (9th Cir.), cert. denied, 351 U.S. 911, 76 S.Ct. 700, 100 L.Ed. 1446. Therefore coram nobis may not be used as a "collateral writ of error between the state and federal jurisdictions." Rivenburgh v. Utah, 299 F.2d 842, 843 (10th Cir.); see also Blake v. Florida, 395 F.2d 758 (5th Cir.); Booker v. Arkansas, supra, 380 F.2d at 243–244.

In view of these limitations on our jurisdiction and the absence of any demonstrated adverse legal effect on the present parties, we conclude that we may not grant relief on the constitutional claims asserted by the successors of Dr. Henrie. St. Pierre v. United States, 319 U.S. 41, 43, 63 S.Ct. 910, 87 L.Ed. 1199; see also Sibron v. New York, 392 U.S. 40, 70, 88 S.Ct. 1889, 20 L.Ed.2d 917 (Fortas, J., concurring).

*The Constitutionality of the Oklahoma Criminal Abortion Statutes—21 O.S.1971 §§ 861 and 862*

As stated above, we are satisfied that the intervenors—Dr. Allison, Dr. Hladky and Reverend Wolf—have standing and present a justiciable case challenging the constitutionality of 21 O.S.1971 §§ 861 and 862, reproduced in the margin.[1]

---

1. "§ 861. Procuring an abortion.—Every person who administers to any woman, or who prescribes for any woman, or advises or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the penitentiary not less than two nor more than five years.

Roe v. Wade, supra, held invalid under the Fourteenth Amendment similar criminal abortion laws of the State of Texas, Articles 1191–1194 and 1196 of the Texas Penal Code, Vernon's Ann. In essence these statutes prohibited administering any drug or medicine, or using any violence or means whatsoever, externally or internally applied, to procure an abortion; however, the statutes did not apply where an abortion was procured or attempted by medical advice for the purpose of saving the life of the mother. The Supreme Court held that the Texas statutes, as written, unconstitutionally infringed the right of privacy of a pregnant woman and were invalid under the due process clause of the Fourteenth Amendment. The Court stated, 410 U.S. at 164, 93 S. Ct. at 732: ·

> "1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.
>
> "(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.
>
> "(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health."

We are satisfied that under this decision of the Supreme Court we must declare 21 O.S.1971 §§ 861 and 862 invalid

under the Fourteenth Amendment. They are similar in their broad prohibitions against acts connected with an abortion, with the single exception where the abortion is necessary to preserve the life of the mother. § 861 proscribes advising or procuring any woman to take any medicine, drug or substance, or use or employ any instrument or means to procure a miscarriage. Moreover, while we have no pregnant woman as a party to this suit, the interests of such a woman may be asserted by the intervenors for the reasons stated, and thus the prohibitions of § 862 are likewise subject to challenge. In addition, the challenges by the intervenors must be considered in the light of the Oklahoma statute on aiding and abetting the commission of crimes, 21 O.S.1971 § 172, which brings into focus a present injury to the intervenors in. connection with their demonstrated interests in giving counsel and advice concerning the option of abortion.

Therefore, we conclude that these intervenors are entitled to a judgment declaring that 21 O.S.1971 §§ 861 and 862 are unconstitutional under the Fourteenth Amendment. Believing that the State officers who are defendants will give full recognition to the decision in this cause, we feel it unnecessary to grant any injunctive relief. See Roe v. Wade, supra, 410 U.S. at p. 113, 93 S.Ct. 705.

We have noted the decision of the Oklahoma Court of Criminal Appeals in Jobe v. State, 509 P.2d 481; decided January 31, 1973, stating that 21 O.S. 1971 §§ 861 and 862 are unconstitutional. The case is pending on rehearing and S. M. Fallis, Jr., District Attorney of District 14, has asked that we await final disposition in the State Court. However, since the intervenors continue to be affected by the statutes

"§ 862. Submitting to or soliciting attempt to commit abortion.—Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars, or by both."

generally in their conduct, we feel we should decide this case under the Supreme Court's opinions which are now final.[2]

We have also examined the unreported decision in Brown v. Trimble, No. C–71–662 in the District Court of Cleveland County, Oklahoma. That judgment declared as between the plaintiffs and the defendant District Attorney of that county that 21 O.S.1971 §§ 714, 861 and 862 are invalid. However the decision does not appear to bind the parties here in any way and it did not treat the construction of § 714 in connection with the questions concerning that statute discussed below. Thus we feel we should proceed with the dispositions made in this opinion.

*The Oklahoma Statute Prohibiting the Destruction of an Unborn Quick Child—21 O.S.1971 § 714*

In addition to the Oklahoma criminal abortion laws discussed above, this State has since 1910 had an additional criminal statute prohibiting the destruction of a quick child unless it is necessary to preserve the life of the mother. 21 O.S.1971 § 714 provides:

"714. *Procuring destruction of unborn child*: Every person who administers to any woman pregnant with a quick child, or who prescribes for such woman, or advises or procures any such woman to take any medicine, drug or substance whatever, or who uses or employs any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, is guilty in case the death of the child or of the mother is thereby produced, of manslaughter in the first degree."

---

2. The Supreme Court denied rehearing on February 26, 1973, in both Roe v. Wade and Doe v. Bolton.

3. See Roe v. Wade, supra, 410 U.S. at 113, 93 S.Ct. 705, and medical authority there cited.

In view of this law and the Oklahoma statute on aiding and abetting, the activities of the intervenors in counseling are affected so that standing and justiciability are present. However, we view the constitutional claims of the intervenors against § 714 differently from their claims against the statutes we have been constrained to declare invalid above.

§ 714 demonstrates on its face a strong public policy in Oklahoma to protect the life of a quick child. It provides that one is guilty of manslaughter in case of the death of the *child* or of the mother, and it imposes a heavier penalty than the other criminal abortion statutes. The statute thus touches on an extremely sensitive area of public policy which was discussed in Roe v. Wade. In staking out the area of permissible State legislation regulating abortions, the Supreme Court stated, 410 U.S. at 164, 93 S.Ct. at 732:

"(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."

■ By its terms § 714 does not conform to the pattern outlined by the Supreme Court for a permissible statute protecting the life of an unborn viable fetus. The Court observed that "[v]iability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks . . . ;"[3] Reference has been made to an occurrence of viability as early as about 20 weeks.[4] Quickening, on the other hand, is generally regarded as occurring at 16 to 18 weeks.[5] Thus as written the Okla-

---

4. L. Hellman & J. Pritchard, Williams Obstetrics 493 (14th ed. 1971).

5. See Roe v. Wade, supra at 113, 93 S.Ct. 705, and the medical authority there cited, Dorland's Illustrated Medical Dictionary 1261 (24 ed. 1965).

homa statute presently protects the child during a *longer portion of the pregnancy* than appears permissible under Roe v. Wade. And its exception for protecting the life of the mother is not phrased so broadly as the exception in the *Roe* case for preservation of the life *or* health of the mother.

We must, however, recognize the right of the State courts to construe or limit the statute so as to save its constitutionality. See United States v. Vuitch, 402 U.S. 62, 70–71, 91 S.Ct. 1294, 28 L.Ed.2d 601. When faced with such constitutional difficulties the State courts may consider the solution of contracting the coverage of statutes, such as the portion of pregnancy protected by § 714. See Skinner v. Oklahoma, 316 U.S. 535, 543, 62 S.Ct. 1110, 86 L.Ed. 1655. Moreover, the courts may consider a saving interpretation of the exception relating to the preservation of the life of the mother—a term which has been construed to include her health. *E. g.*, Roe v. Wade, supra, 410 U.S. at 113, 93 S.Ct. 705.

We feel we should not undertake thus to construe or narrow the State statute. Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222; United States v. 37 Photographs, 402 U. S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822. It is sufficient, we feel, for us to note that § 714 may be capable of the necessary statutory repairs to save its constitutionality, see Welsh v. United States, 398 U.S. 333, 365–366, 90 S.Ct. 1792, 26 L.Ed.2d 308 (Harlan, J., concurring). It is proper to leave the function of construction to the State courts.

■■■ Abstention by the Federal courts is most appropriate where, as here, the State law is uncertain and susceptible of a construction that would avoid or modify the federal constitutional issue. Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 510–511, 92 S.Ct. 1749, 32 L.Ed.2d 257; Fornaris v. Ridge Tool Co., et al., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174. We feel that both the issues of the right of privacy and of vagueness of the statute may be avoided or modified by State Court interpretation of § 714. In view of the possibility of a saving construction, the sensitive area of public policy involved, and the fact that the State criminal laws are in question, we conclude we should abstain from interpreting § 714 in connection with the claims for declaratory as well as injunctive relief. See Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444.

### *21 O.S.1971 §§ 713 and 863*

■■■ In addition to the Oklahoma statutes previously discussed, the complaints in this suit also alleged that 21 O.S.1971 §§ 713 and 863 are unconstitutional. These statutes prohibit the willful killing of an unborn quick child by an injury to the mother and concealing the stillbirth or death of a child.

None of the intervenors has demonstrated any interest or proposed course of conduct that would subject them to a risk of prosecution under these statutes. Under the proof made we can perceive no circumstances which would involve a possible violation of the statutes by reason of the intervenors' activities as counselors to distressed pregnant women. Lacking proof as to the probability of any effect on these intervenors by enforcement of 21 O.S.1971 § 713 or § 861, the Court does not have a controversy to adjudicate as to the constitutionality of the statutes. United Public Workers v. Mitchell, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754; see also Hawkins v. Town of Shaw, Mississippi, 461 F.2d 1171, 1175 (5th Cir.) (Wisdom, J., concurring).

It is therefore ordered as follows:

(1) That all relief is denied to the successors of Dr. Henrie;

(2) That relief by way of a declaratory judgment is granted pursuant to the prayer of the intervenors, Dr. Allison, Dr. Hladky and Rev. Wolf, against the Attorney General of Oklahoma, The Honorable Larry Derryberry and defendants Gee, Harris and Fallis, adjudging and declaring that

as to the intervenors and all others similarly situated and residing in the State of Oklahoma as of trial herein on March 1, 1971, and affected by the Oklahoma criminal abortion statutes, that 21 O.S.1971 §§ 861 and 862 are unconstitutional under the due process clause of the Fourteenth Amendment of the United States Constitution, and are void and unenforceable as to them;

(3) That the claims of the intervenors, Dr. Allison, Dr. Hladky and Rev. Wolf, as to the invalidity of 21 O.S. 1971 § 714, are dismissed without prejudice, the Court concluding that it should abstain from a decision as to the validity of § 714;

(4) That all other relief sought by any parties is denied.

Upon commencement of the action by Dr. Henrie as an indigent, the Court requested Messrs. Pat Malloy and A. F. Ringold of the Tulsa Bar to represent him. They have done so with skill and devotion to the interests of their client and of the other plaintiffs. The Court is indebted to them and to all counsel for their assistance in diligently and skillfully presenting the case.