**Dr. Richard LEIGH, on behalf of himself and all other persons similarly situated, Plaintiff,**

**v.**

**Allen OLSON, Attorney General for the State of North Dakota, and Thomas B. Jelliff, State's Attorney for the County of Grand Forks, State of North Dakota, Defendants.**

**Civ. No. A2–74–43.**

United States District Court,
D. North Dakota,
Northeastern Division.

Nov. 26, 1974.

C. Nicholas Vogel, Fargo, N. D., for plaintiff.

Paul M. Sand, First Asst. Atty. Gen., Gerald W. Vande Walle, Asst. Atty. Gen., Bismarck, N. D., for defendants.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

This action comes before this Court upon a complaint challenging the constitutionality of the North Dakota abortion law; specifically, the following sections of the North Dakota Century Code.

"12–25–01. Procuring an abortion —Punishment.—Every person who administers to any pregnant woman, or who prescribes for any such woman, or who advises or procures any such woman to take, any medicine, drug, or substance, or uses or employs, or procures or advises the use, of any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, shall by punished by imprisonment in the penitentiary for not less than one year nor more than three years, or in a county jail for not more than one year."

"12–25–02. Abortion—If mother or child dies—Punishment.—Every person who administers to any woman pregnant with a quick child, or who prescribes for such woman, or who advises or procures any such woman to take, any medicine, drug, or substance whatever, or who uses or employs, or procures or advises the use, of any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, in case the death of the child or of the mother is produced thereby, is guilty of manslaughter in the first degree."

"12–25–03. Killing unborn quick child in performing abortion—Punishment.—The willful killing of an unborn quick child by an injury committed upon the person of the mother of such child, and not prohibited in the preceding section, is manslaughter in the first degree."

"12–25–04. Soliciting or submitting to attempt at abortion—Punishment.—Every woman who solicits of any person any medicine, drug, or substance whatever and takes the same, or who submits to any operation or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, shall be punished by imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment."

Pursuant to 28 U.S.C. §§ 2201, 2202, plaintiff seeks the judgment of this Court declaring the above sections of Title 12 of the North Dakota Century Code to be in violation of plaintiff's rights as protected by the Constitution of the United States and void. Plaintiff asserts that the existence and threatened enforcement of these provisions, which provide criminal penalties for performing or procuring abortions, other than abortions to preserve the life of the mother, illegally interfere with the plaintiff's relationship with his medical patients. Relying upon the Supreme Court's decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), this interference is contended to be an infringement of his constitutional right to practice medicine, which includes the right to advise and perform elective abortions, to the extent permitted by *Roe.*

Jurisdiction is founded upon 28 U.S.C. § 1343(3)[1] in that plaintiff's cause of action arises under 42 U.S.C. § 1983.[2]

## FACTS

The matter has been brought on for determination by plaintiff's motion for summary judgment. There is no genuine issue as to any material fact. The Court finds:

Plaintiff Richard Leigh is a practicing physician in Grand Forks, North Dakota, where he specializes in obstetrics and gynecology. From time to time, he is called upon to render medical decisions on behalf of his patients with respect to the advisability of seeking an abortion. At times, his best medical judgment dictates that with respect to certain patients and the special circumstances involved with those patients, an abortion should be performed. The Attorney General of the State of North Dakota has advised the State's Attorneys to prosecute abortion cases as the specific facts and circumstances of each case determine.[3]

The provisions of the North Dakota statutes quoted herein, together with the advice and direction of the Attorney General to the State's Attorneys interferes with and inhibits the plaintiff in his practice of medicine, and in his relationship with his patients. While his medical judgment in a particular case may indicate an abortion may be performed, the nonmedical considerations which must be taken into account by the plaintiff is the threatened enforcement of the North Dakota statutes proscribing abortion and the advising of abortion. Likewise, the statutes and the stance of the Attorney General have caused the hospitals in Grand Forks, North Dakota, to refuse to permit their facilities to be used for performing abortions.

## STANDING

The defendants challenge plaintiff's standing to contest the validity of the challenged statutes in this case which lacks, as a party, a pregnant woman who has been denied an abortion. Defendants appear to have overlooked the Supreme Court's treatment of a physician's standing in the *Roe* case:

"We conclude, however, that the physician-appellants, who are Georgia-licensed doctors consulted by pregnant women, also present a justiciable controversy and do have standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes. The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants,

---

1. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citzen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. Section 11–16–01 NDCC includes within the duties of the State's Attorneys, the duty to
   "1. Attend the district court and conduct on behalf of the state all prosecutions for public offenses . . . ."
   Section 54–12–01 NDCC includes within the duties of the Attorney General the duty to
   "4. Consult with and advise the several state's attorneys in matters relating to the duties of their office;
   5. Attend the trial of any party accused of crime and assist in the prosecution when in his judgment the interests of the state require it . . . ."

therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." 410 U.S. at 188, 93 S.Ct. at 745.

In Nyberg v. City of Virginia, 495 F. 2d 1342 (8th Cir. 1974), several persons, including two physicians, challenged the constitutionality of a resolution, adopted by a municipal hospital, which prohibited the use of hospital facilities for the performance of any abortion which was not necessary to preserve the life of the mother. The trial court dismissed all plaintiffs for lack of standing except the two physicians. The Eighth Circuit, in affirming the lower court's declaration that the challenged resolution was unconstitutional, held that the two physicians did have standing.

Referring to Roe and Doe, the Eighth Circuit, at 1344, opined that the "Supreme Court . . . clearly paved the way for physicians to assert their constitutional rights to practice medicine, which now includes the right to advise and perform abortions. . . ." The doctors in Nyberg were not faced with a statute providing criminal penalties for performing abortions. Nevertheless, the Eighth Circuit took an expansive approach to the question of standing:

> "The impact of the court's discussion cannot be fairly said to limit standing to sue in abortion cases to pregnant women. Neither can these opinions be read so narrowly as to accord standing only to a physician threatened with criminal prosecution." at 1344.

The recognition of the doctor's standing noted that the "claims of medical doctors to 'freely practice medicine according to the highest medical standards without arbitrary outside restraints' are inextricably bound up with the privacy rights of women to seek abortions." at 1344.

Dr. Leigh is not required to risk becoming a test case in a criminal prosecution. Under the rationale of Doe and Nyberg, he has standing.[4]

## CONSTITUTIONAL QUESTION

The right of a pregnant woman to choose, in consultation with her physician, to terminate her pregnancy, and the attendant right of the physician to perform abortions, and to advise the procurement thereof, has been thoroughly discussed by Justice Blackmun in Roe and Doe. The holdings in these cases upholding these rights are based upon the right to privacy in a physician-patient relationship and the Due Process Clause of the Fourteenth Amendment.

The language in the North Dakota statutes differs in some respects from the Texas and Georgia statutes held invalid in Roe and Doe, but the substance of the statutes is identical.[5] Each proscribes the use of any drugs, instruments or other means to produce an abortion or miscarriage. The statutes only except abortions which are performed to save the life of the mother, and each carries severe criminal penalties for a violation.

Roe sets forth how a state may restrict the performance of an abortion:

> "1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life-saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

---

4. Cases upholding the standing of a physician to challenge the validity of legislative enactments prohibiting abortions other than to save the life of the mother include Doe v. Turner, 361 F.Supp. 1288, 1289 (S.D.Iowa 1973); Henrie v. Derryberry, 358 F.Supp. 719 (N.D.Okl.1973).

5. The Supreme Court noted that the North Dakota statute was similar to the Texas statute at issue in Roe, 410 U.S. at 118, n. 2, 93 S.Ct. 705.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

2. The State may define the term 'physician,' as it has been employed in the preceding [numbered] paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined." at 164, 165, 93 S.Ct. at 732.

Since the North Dakota statute on its face is identical in substance to the Texas and Georgia statutes, this Court is compelled to follow the decision of the Supreme Court of the United States in *Roe* and *Doe,* and declare the challenged provisions, to the extent that they proscribe abortion beyond that permitted by *Roe,* to be unconstitutional and void.[6]

■ This Court must next consider defendants' argument that "the North Dakota statutes, specifically Sections 12–25–01 through 12–25–04, are subject to construction particularly as to the last trimester. It would be equally as well within the perogative of the Court to construe the statute . . ." to make it applicable to the last trimester.

Two provisions proscribe the procurement, NDCC § 12–25–01, and soliciting, NDCC § 12–25–04, of a "miscarriage", while the other two provisions challenged, NDCC § 12–25–02, and 12–25–03, proscribe the killing and destruction of a "quick child" and provide greater punishment. The meaning of a "quick child" was not raised by the parties, but for the Court to determine whether Sections 12–25–02 and 12–25–03 can be construed to regulate abortion procedures in the third trimester, it is necessary to examine the distinction between "quick" and "viable".

A three judge United States District Court recently considered the validity of an Oklahoma statute, prohibiting the destruction of an unborn quick child, identical to NDCC § 12–25–02. Henrie v. Derryberry, 358 F.Supp. 719 (N.D.Okl. 1973). The Oklahoma court felt compelled to abstain on the question of the validity of the statutes proscribing the destruction of a "quick child" because of the strong public policy of Oklahoma.

"We must, however, recognize the right of the State courts to construe or limit the statute so as to save its constitutionality. When faced with such constitutional difficulties the State courts may consider the solution of contracting the coverage of statutes, such as the portion of pregnancy protected by § 714. Moreover, the courts may consider a saving interpretation of the exception relating to the

6. Many courts have considered the constitutionality of restrictive state statutes similar in substance to North Dakota's abortion law, and in some cases, statutes which would have allowed abortions which North Dakota provisions would proscribe, and have determined that *Roe* and *Doe* mandated a declaration that those statutes were invalid. Vuitch v. Hardy, 473 F.2d 1370 (4th Cir. 1973) (Maryland); Hodgson v. Anderson, 378 F.Supp. 1008 (D.Minn. filed on June 28, 1974); Abele v. Markle, 369 F.Supp. 807 (D.Conn.1973), on remand from Supreme Court, 410 U.S. 951, 93 S.Ct. 1412, 35 L.Ed. 2d 683; Doe v. Rampton, 366 F.Supp. 189 (D.Utah 1973); Doe v. Turner, 361 F.Supp. 1288 (S.D.Iowa 1973); Doe v. Woodahl, 360 F.Supp. 20 (D.Mont.1973); Doe v. Israel, 358 F.Supp. 1193 (D.R.I.1973); Henrie v. Derryberry, 358 F.Supp. 719 (N.D.Okl. 1973).

preservation of the life of the mother —a term which has been construed to include her health.

We feel we should not undertake thus to construe or narrow the State statute. It is sufficient, we feel, for us to note that § 714 may be capable of the necessary statutory repairs to save its constitutionality. It is proper to leave the function of construction to the State courts." at 726 (citations omitted)

The Supreme Court in *Roe* defines quickening as "the first recognizable movement of the fetus *in utero,* appearing usually from the 16th to 18th week of pregnancy," 410 U.S. at 132, 93 S.Ct. at 716, 35 L.Ed.2d 147 citing Dorland's Illustrated Medical Dictionary 1261 (24th Ed.1965). The Court notes that the period of quickening became a focal point under common law for distinguishing between pre- and post-quickening abortions, both as to prohibition and severity of punishment, at 132–136, 93 S. Ct. 705. This distinction was adopted in early American legislation on the subject, with the first statute relating to a woman "quick with child," and the distinction had proliferated by the mid-1800's, at 138, 93 S.Ct. 705. However, "[g]radually, in the middle and late 19th century the quickening distinction had disappeared from the statutory law of most States and the degree of the offense and the penalties were increased.", at 139, 93 S.Ct. at 720. The Supreme Court clearly distinguished between "quickening" and "viability", and set viability as the point at which that protection of the potential life of the unborn fetus provided a compelling state interest to "regulate, and even proscribe, abortion."

"As we have noted, the common law found greater significance in quickening. Physicians and their scientific colleagues have regarded that event with less interest and have tended to focus either upon conception, upon live birth, or upon the interim point at which the fetus becomes 'viable', that is, potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks), but may occur earlier, even at 24 weeks." at 160, 93 S.Ct. at 730.

After noting that the period of quickening is from 16 to 18 weeks, and after noting the existence and rationale of the distinction between treatment of pre- and post-quickening found in a few statutes, and after clearly distinguishing between "quickening" and "viability", the court chose the latter as the point where the compelling interest permitted state regulation and proscription.

In a recent decision, Hodgson v. Anderson, 378 F.Supp. 1008 (D.Minn.) filed on June 28, 1974, a three judge United States District Court in Minnesota, in declaring the Minnesota statutes regulating abortion to be unconstitutional, dealt with "viability" and the attempt of the State of Minnesota, through legislation, to set the point of viability at 20 weeks.

"Thus in drafting statutes regulating the abortion process, the state must consider the separate trimester test. Where the state fails to do so, the regulation is overbroad because it fails to balance the state's right against the woman's. Nyberg v. the City of Virginia, [495 F.2d 1342] (8th Cir. 1974) ; Word v. Poelker, *supra* [497 F.2d 1063 (8th Cir.)].

The statutes in question here proscribe abortions when the fetus becomes 'potentially' viable except where necessary to preserve the life or health of the woman. Central to this restriction is the placement of the term 'potentially viable' in the fetal development. Section 1, Subd. 2 of S.F. No. 498 (Minn.Stat. § 145.411, Subd. 2) clearly states that viability occurs at the halfway point in gestation. It being universally accepted that normal human gestation is about 40 weeks, the Minnesota law gives the state the absolute power to regulate under part 3 of the *Roe* test at 20 weeks.

Defendants have presented no evidence which would persuade this Court that viability does in fact occur at 20 weeks. In its historical review of the abortion dilemma, this Supreme Court in *Roe* said:

'Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks.' 410 U.S. at 160, [93 S.Ct. [705] at 730].

Even accepting the lesser of these figures, 24 weeks of pregnancy is still within the second trimester of that stage subsequent to the first trimester, but prior to viability. Using 24 weeks as the earliest point of viability places a decision to terminate pregnancy between 20 and 24 weeks in the second part of the *Roe* test. Thus at any point prior to 24 weeks and subsequent to approximately the end of the first trimester, the state may regulate only insofar as such regulations are related to maternal health.

We do not accept the suggestion of the defendants that the Supreme Court's comment on viability was only dicta. It appears to this Court that after reviewing the historical, medical, and legal attitude on abortions, the Supreme Court concluded that as between cases the point of viability will vary, and whether or not the fetus is in fact viable must be left to the medical judgment of the physician. In any event, under present technology, it does not arise prior to 24 weeks. It appears that the Court made its comments on viability to prevent the very thing that has happened here, which is the attempt to set viability by legislative definition and thereby, in effect, unreasonably interfere with what the Court has determined to be a fundamental right." at 1016 of opinion.

This Court takes judicial notice of a public policy in North Dakota perhaps equally as strong as that in Oklahoma, but public policy cannot infringe upon rights reserved to the individual in the United States Constitution, which right relating to abortion the Supreme Court has said is fundamental. Therefore, this Court cannot subscribe to the approach and conclusions of the Oklahoma Court as expressed in *Henrie,* and will not abstain. *See* Wisconsin v. Constantineau, 400 U.S. 433, 437, 438, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Clark v. City of Fremont, 377 F.Supp. 327, 333, 334 (D.Neb.1974); Doe v. Woodahl, 360 F.Supp. 20, 22 (D.Mont.1973). Sections 12–25–02 and 12–25–03 are clear on their face. "Quickening" cannot be construed to mean "viable" and there is no way the statutes can be construed or interpreted to save their constitutionality. Provisions in the challenged sections are not severable.[7] As hereinbefore mentioned, this Court recognizes that public policy has clearly indicated that abortion is to be regulated in North Dakota. It is incumbent upon the North

---

7. This Court, although the defendants urge that we do so, cannot redraft the provisions to comport with *Roe*, for this would entail a legislative function. This position comports with the position taken in Doe v. Turner, 361 F.Supp. 1288 (S.D.Iowa 1973), in declaring the Iowa abortion law invalid as a whole:

"This Court also cannot agree that the Iowa abortion statute is severable under the circumstances at hand, although the defendants have argued forcefully that it is. There is no single portion of the wording of the Iowa statute that can simply be deleted nor can the interpretation of the statute be slightly changed to enable it to meet the Roe v. Wade standards. In order to 'sever' the Iowa statute, as defendants request, it would have to be completely reconstructed judicially. This is a task which confronts the Iowa General Assembly if they desire to restrict the performance of abortions in Iowa, and not the judiciary. The defendants are correct in pointing out that courts will uphold the constitutionality of a statute when possible by construing it in a constitutional manner."

"This Court, however, cannot invade the province of the Legislature and redraft this statute to the extent that would be required to meet the guidelines of the United States Supreme Court in Roe v. Wade. There is no ready way 'the legal can be distinguished from the illegal.'" at 1292.

Dakota Legislature to tailor the State's abortion statutes to fit within the area of permissible state regulation as set out in *Roe*.

It is ordered the Motion for Summary Judgment is granted.

It is further ordered that judgment be entered declaring Section 12–25–01, Section 12–25–02, Section 12–25–03 and Section 12–25–04 of the North Dakota Century Code to be unconstitutional and void.