**Jane DOE et al.**

**v.**

**Richard ISRAEL, Attorney General of the State of Rhode Island.**

**Civ. A. No. 5153.**

United States District Court,
D. Rhode Island.

May 16, 1973.

Charles G. Edwards, Edwards & Angell, Richard W. Zacks, Rhode Island Affiliate American Civil Liberties Union, Providence, R. I., Janice Goodman, Bellamy, Goodman, Kelly & Ross, New York City, Nancy Stearns, Center for Constitutional Rights, New York City, for plaintiffs.

W. Slater Allen, Jr., Asst. Atty. Gen., Dept. of the Atty. Gen. for the State of Rhode Island, Providence, R. I., for defendant.

Joseph P. Witherspoon, Austin, Tex., Francis Boyle, Moore, Virgadamo, Boyle & Lynch, Ltd., Newport, R. I., for intervenor-Constitutional Right to Life Committee.

Thomas I. Emerson, Professor of Law, Yale Law School, New Haven, Conn., court appointed amicus.

Guy J. Wells, Bruce M. Selya, Providence, R. I., on behalf of certain doctors.

Greenbaum, Wolff & Ernst, New York City; Harriet F. Pilpel, Frederic S. Nathan, Nancy F. Wechsler, Eve W. Paul, New York City, of counsel, amicus for plaintiffs by Planned Parenthood Federation of America, Inc.

## OPINION

PETTINE, Chief Judge.

This action challenges the constitutionality of the abortion statute enacted by the Rhode Island legislature in March of 1973. Plaintiffs originally sought injunctive and declaratory relief against the Rhode Island Criminal Abortion Statute (73–S 287 Substitute "A"), R.I. G.L. § 11–3–1 et seq.[1] The claim for in-

---

1. The statute in toto reads:
 "73–S 287 Substitute 'A'
 Original Introduced by—
 Senators Taylor, Chaves, McKenna, Maida, Canulla, DaPonte and Castro
 Ordered Printed by—
 House of Representatives
 Referred to—
 Senate Committee on Judiciary
 Date Printed—
 March 7, 1973
 State of Rhode Island and Providence Plantations

JANUARY SESSION, A.D. 1973

AN ACT Relating to Abortions.
 PREAMBLE
 Whereas, The supreme court of the United States on January 22, 1973, recognized and acknowledged that state regulation is appropriate in any decisions to terminate pregnancy; and
 Whereas, Said court found that a state may properly assert its interests in safeguarding life, in maintaining medical standards, and in protecting life in the proper exercise of its governmental functions; and

junctive relief has been dropped, and plaintiffs now seek only a declaration that this statute is unconstitutional.

Following the decisions by the United States Supreme Court in the abortion cases, Roe v. Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), a three-judge United States District Court declared unconstitutional the prior Rhode Island criminal abortion statute which had prohibited abortions except when necessary to

Whereas, Any right of privacy regarding decisions to terminate pregnancy is not an absolute right and must be considered in the light of important state interests in the regulation of such decisions; and

Whereas, The state of Rhode Island has a legitimate and important interest in preserving and protecting the life of pregnant women and in protecting all human life; and

Whereas, The state of Rhode Island, in its fulfillment of its legitimate function of protecting the well-being of all persons within its borders, hereby declares that in the furtherance of the public policy of said state, human life and, in fact, a person within the language and meaning of the fourteenth amendment to the constitution of the United States, commences to exist at the instant of conception; now, therefore, It is enacted by the General Assembly as follows:

Section 1. Chapter 11–3 of the general laws entitled 'Abortion' is hereby repealed in its entirety.

Sec. 2. Title 11 of the general laws entitled 'Criminal offenses' is hereby amended by adding thereto the following chapter:

'CHAPTER 3
'Abortion

'11–3–1. PROCURING, COUNSELING OR ATTEMPTING MISCARRIAGE.—Every person who, with the intent to procure the miscarriage of any pregnant woman or woman supposed by such person to be pregnant, unless the same be necessary to preserve her life, shall administer to her or cause to be taken by her any poison or other noxious thing, or shall use any instrument or other means whatsoever or shall aid, assist or counsel any person so intending to procure a miscarriage, shall if the woman die in consequence thereof, be imprisoned not exceeding twenty (20) years nor less than five (5) years, and if she does not die in consequence thereof, shall be imprisoned not exceeding seven (7) years nor less than one (1) year; provided that the woman whose miscarriage shall have been caused or attempted shall not be liable to the penalties prescribed by this section.

'11–3–2. MURDER CHARGED IN SAME INDICTMENT.—Any person who shall be indicted for the murder of any infant child, or of any pregnant woman, or of any woman supposed by such person to be or to have been pregnant, may also be charged in the same indictment with any or all the offenses mentioned in section 11–3–1, and if the jury shall acquit such person on the charge of murder and find him guilty of the other offenses or either of them, judgment and sentence may be awarded against him accordingly.

'11–3–3. DYING DECLARATIONS ADMISSIBLE.—In prosecutions for any of the offenses described in section 11–3–1, in which the death of a woman is alleged to have resulted from the means therein described, dying declarations of the deceased woman shall be admissible as evidence, as in homicide cases.

'11–3–4. CONSTRUCTION AND APPLICATION OF SECTION 11–3–1.—It shall be conclusively presumed in any action concerning the construction, application or validity of section 11–3–1, that human life commences at the instant of conception and that said human life at said instant of conception is a person within the language and meaning of the fourteenth amendment of the constitution of the United States, and that miscarriage at any time after the instant of conception caused by the administration of any poison or other noxious thing or the use of any instrument or other means shall be a violation of said section 11–3–1, unless the same be necessary to preserve the life of a woman who is pregnant.

'11–3–5. CONSTITUTIONALITY.—If any part, clause or section of this act shall be declared invalid or unconstitutional by a court of competent jurisdiction, the validity of the remaining provisions, parts or sections shall not be affected.'

Sec. 3. This act shall take effect upon passage."

preserve the life of the mother and which prohibited abortion counseling.[2] Women of Rhode Island v. Israel, C.A. No. 4605 (D.R.I. Feb. 7, 1973); Rhode Island Abortion Counseling Service v. Israel, C.A. No. 4586 (D.R.I. Feb. 7, 1973).

The present legislative product at issue is an attempt by the Rhode Island lawmakers to infuse constitutionality into its heretofore unconstitutional statute by declaring that human life begins at the moment of conception and that such life is a person within the meaning of the Fourteenth Amendment to the United States Constitution.

Such legislative declarations, defendant argues, take the Rhode Island statute outside of the ambit of Roe v. Wade, *supra*, and Doe v. Bolton, *supra*. The prologue to the law under question here recites that the United States Supreme Court acknowledged the appropriateness of state regulations in terminating pregnancy and safeguarding and protecting human life, and the non-absolute character of the right of privacy. The defendant's position is that the Supreme Court

---

2. *"Chapter 3*
*Abortion*

**11-3-1. Procuring, counseling, or attempting miscarriage.**—Every person who, with the intent to procure the miscarriage of any pregnant woman or woman supposed by such person to be pregnant, unless the same be necessary to preserve her life, shall administer to her or cause to be taken by her any poison or other noxious thing, or shall use any instrument or other means whatsoever or shall aid, assist or counsel any person so intending to procure a miscarriage, shall if the woman die in consequence thereof, be imprisoned not exceeding twenty (20) years nor less than five (5) years, and if she do not die in consequence thereof, shall be imprisoned not exceeding seven (7) years nor less than one (1) year: provided that the woman whose miscarriage shall have been caused or attempted shall not be liable to the penalties prescribed by this section.

**11-3-2. Murder charged in same indictment.**—Any person who shall be indicted for the murder of any infant child, or of any pregnant woman, or of any woman supposed by such person to be or to have been pregnant, may also be charged in the same indictment with any or all the offenses mentioned in § 11-3-1, and if the jury shall acquit such person on the charge of murder and find him guilty of the other offenses or either of them, judgment and sentence may be awarded against him accordingly.

**11-3-3. Dying declarations admissible.**—In prosecutions for any of the offenses described in § 11-3-1, in which the death of a woman is alleged to have resulted from the means therein described, dying declarations of the deceased woman shall be admissible as evidence, as in homicide cases.

**11-3-4. Advertising or selling services or drugs to procure miscarriage.**—Every person who knowingly advertises, prints, publishes, distributes or circulates, or knowingly causes to be advertised, printed, published, distributed or circulated, any pamphlet, printed paper, book, newspaper, notice, advertisement or reference containing words or language giving or conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop or office where, any poison, drug, mixture, preparation, medicine, or noxious thing, or any instrument or means whatsoever, or any advice, direction, information or knowledge, may be obtained for the purpose of causing or procuring the miscarriage of a woman pregnant with child, or who knowingly exhibits, advertises or sells to be used for such purpose any poison, drug, mixture, preparation, medicine, noxious thing, instrument or means whatsoever, or who, with or without any charge therefor, gives to any person any advice, information, instruction or direction for the purpose of causing or assisting in any such miscarriage, shall be punished by imprisonment for not more than two (2) years, or by a fine of not more than one thousand dollars ($1,000), or by both.

**11-3-5. Forfeiture of advertising.**—Any print, publication, circular, advertisement or notice described in § 11-3-4 found by any officer in executing a search warrant or which shall be produced and brought into court shall be forfeited to the state, and such further proceedings shall be had thereon for their forfeiture as is prescibed by law in chapter 21 of title 12, and upon entry of final judgment of forfeiture shall be destroyed by order of the court."

in Roe v. Wade, *supra,* and Doe v. Bolton, *supra,* never addressed the issues at stake in this controversy.

Plaintiffs sue on behalf of themselves and as representatives of the class of all other women similarly situated who are now or may hereafter be prevented from obtaining a legal abortion in Rhode Island because termination of their pregnancies is not necessary to preserve their lives.

### Findings of Fact

Mary Roe, Jane Doe and Sally Smith, all United States citizens and residents of Rhode Island, testified or stated by affidavit that they were pregnant on March 26, 1973, the date on which this complaint was filed and that they desired to terminate their pregnancies in Rhode Island by a physician licensed in this state. Prior to the court hearing of this case, Mary Roe, mother of eight children and Jane Doe, mother of two children, obtained abortions in New York. Mary Roe's abortion was performed on March 31, 1973. Jane Doe had completed her plans to go to New York on March 22, 1973, though her pregnancy was terminated after the commencement of this action. Sally Smith, did not appear at the trial. None needed to terminate her pregnancy to save her life.

Mrs. Ann Frank was appointed as guardian of the unborn children of the named plaintiffs by the Probate Court of the City of Providence in Rhode Island. In that capacity she sought to intervene urging jurisdiction of the unborn "children" pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 2281, 2284, and relying on 42 U.S.C.A. § 1984. The motions of Ann Frank for intervention and for appointment as guardian ad litem were denied by this Court.

Three Rhode Island licensed physicians testified they would have performed abortions on certain of their pa-

tients except for the Rhode Island statute.

A number of learned authorities with impressive credentials in general obstetrical practice, surgery, perinatal physiology or fetal research testified for the defendant.[3] Exhaustively they gave their opinions as to when life commenced, detailing the commonly used methods of abortion, their varied and impressive experiences with pre-natal life, anatomical recognition of the various members of aborted fetuses, practices used to identify each, and the physiological and psychological results on the mother. In short, they ran the gamut.

I neither summarize nor make any findings of fact as to their testimony. To me the United States Supreme Court made it unmistakably clear that the question of when life begins needed no resolution by the judiciary as it was not a question of fact. As will be discussed infra, I find it all irrelevant to the issues presented for adjudication.

### Standing

Defendant contends that plaintiffs lack standing because "Jane Doe can go to neighboring states where her medical problems can be resolved" (Defendant's memorandum, p. 4) and because under the holding of Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed. 2d 696 (1971), and its companion cases, as defendant reads them, pregnant women who are not subject to criminal sanction for obtaining abortions are not proper plaintiffs to challenge criminal abortion statutes. Defendant also argues that plaintiffs have an adequate remedy at law.

In both Roe v. Wade and Doe v. Bolton, *supra,* the Supreme Court held that pregnant women who are thwarted by their state's criminal abortion laws have presented a case or controversy and have standing to sue. In this case, as in *Roe*

---

3. Plaintiffs did not introduce medical testimony, feeling that the decisions in Roe v. Wade and Doe v. Bolton decided the issue and made all medical testimony irrelevant.

and *Doe, supra*, we have pregnant women "thwarted by the [Rhode Island] criminal abortion laws." The Attorney General of Rhode Island, defendant here, has unequivocally stated that violaters of the abortion law will be subject to prosecution, and this threatened enforcement in itself has and will cause injury to plaintiffs and members of their class.

There are no meaningful factual differences nor legal reasons to cause this Court to depart from the unmistakable teachings of Roe v. Wade, *supra*, that plaintiffs have standing to sue. If the "adequate" remedy at law defendant refers to is monetary damages, it is nothing short of ludicrous to argue, as defendant apparently does, that monetary damages would be an adequate remedy to pregnant women who seek abortions. I hold that plaintiffs have standing to undertake this litigation and that they have presented a justiciable controversy.

### Need for a Three-Judge Court

██ When an injunction is sought against the enforcement of a state statute on grounds of unconstitutionality, a three-judge district court is required under 28 U.S.C. § 2281 and 2284. When as here, a declaratory judgment alone is sought against a state statute, the weight of authority is that a single judge has jurisdiction to decide the claim. In Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), the Supreme Court found that on the facts of that case a single judge appropriately determined an action solely for declaratory relief, but declined to decide.

> "[W]hether an action solely for declaratory relief would under all circumstances be inappropriate for consideration by a three-judge court."

372 U.S. 144, 154, 83 S.Ct. 554, 560. See also Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

██ The First Circuit Court of Appeals has read *Mendoza-Martinez* to allow a single judge to hear a claim for declaratory judgment where there is no claim for injunctive relief. Merced Rosa v. Herrero, 423 F.2d 591 (1st Cir. 1970).

However, dicta by the Supreme Court in Samuels v. Mackell, 401 U.S. 66, 72, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971) that

> "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid"

complicated the matter. If declaratory and injunctive relief are to be equated in the doctrine that federal courts should not interfere with pending state criminal prosecutions, are they to be equated in terms of the considerations which require the convening of a three-judge court? I think not. As has often been noted, the three-judge court statute should be strictly construed because of the burden it places on the federal judiciary. Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). Moreover, the Supreme Court recently affirmed the constitutionality of a state statute without discussion of three-judge court jurisdiction where a single judge had issued declaratory relief, which was the only relief requested, against the statute and had been reversed by a court of appeals. Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). This Court finds that it may proceed as a single-judge Court to determine the merits of this claim for declaratory relief.

Plaintiffs have urged upon this Court another doctrine that would support consideration of this matter by a single judge. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) and Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) hold that when prior decisions make unsubstantial or frivolous any claim that a state statute on its face is not unconstitutional, a three-judge court is not re-

quired. In *Bailey, supra,* 369 U.S. at p. 33, 82 S.Ct. at p. 551, the Supreme Court stated:

> "We hold that three judges are . . . not required when, as here, prior decisions make frivolous any claim that a state statute on its face is not unconstitutional. . . . The reasons for convening an extraordinary court are inapplicable in such cases, for the policy behind the three-judge requirement—that a single judge ought not to be empowered to invalidate a state statute under a federal claim—does not apply.

> The three-judge requirement is a technical one to be narrowly construed, Phillips v. United States, 312 U.S. 246, 251 [61 S.Ct. 480, 483], 85 L.Ed. 800. The statute comes into play only when an injunction is sought 'upon the ground of the unconstitutionality' of a statute. There is no such ground when the constitutional issue presented is essentially fictitious."

Consideration of the *Bailey* and *Turner* doctrine necessarily leads into the merits of this controversy.

### Conclusions of Law

Can it be said that the decisions of the Supreme Court in Roe v. Wade and Doe v. Bolton make frivolous any claim that the Rhode Island criminal abortion statute on its face is not unconstitutional? Is the constitutional defense presented here "essentially fictitious?"

With due respect and in no way meaning to mitigate the sensitive and consuming nature of the abortion controversy, I am constrained to answer both questions in the affirmative. For reasons hereinafter stated, I find the statute to be unconstitutional.

Defendant and intervenors have raised two principal and interrelated arguments in defense of this statute. It is first argued that the state legislature has found that life begins at conception and has protected this life from homicide. Secondly, it is argued that the state legislature has declared a fetus to be a "person" within the meaning of the Fourteenth Amendment to the United States Constitution and that this legislative declaration is binding on this Court. Both arguments are insufficient.

The Rhode Island legislature apparently read the opinion of the Supreme Court in Roe v. Wade to leave open the question of when life begins and the constitutional consequences thereof. This is a misreading of the opinions of the Supreme Court in Roe v. Wade and Doe v. Bolton.

It is apparent from the opinion in *Roe* that the argument that life begins at the instant of conception and that the taking of this fetal life would be homicide was raised by the parties and amici before the Supreme Court and that the Supreme Court considered this argument in reaching its decision. A reading of the opinion as a whole can result in no other conclusion. Moreover, there are numerous specific indications that this argument was raised and considered.

First, the Texas statute found to be unconstitutional in *Roe* had previously been found to be constitutional by a Texas court on the grounds, in part, that the Texas statute implicitly recognized human life prior to actual birth and that the definition of human life was for the legislature and not the courts. 410 U.S. at 119, 93 S.Ct. 705, 35 L.Ed.2d 147. Second, the court went to great lengths to detail the history of attitudes and laws about abortions, including various concepts of when life begins. At 129–146, 93 S.Ct. 705. Third, the argument was specifically addressed at 147, 93 S.Ct. 705, where the court declined to accept Texas' argument that the State's interest was defined by the "fact" that life began at the moment of conception and instead recognized that the State's interest was in the protection of potential life.[4] Fourth, the court held, in

---

4. The court, by giving recognition to the "less rigid" claim of a legitimate state interest on potential life, did not leave it open to states to re-assert the more rigid

the face of the argument that life begins at conception, that a fetus is not a person within the meaning of the Fourteenth Amendment, at 156–162, 93 S.Ct. 705. Lastly, the court noted that those in medicine, philosophy, and theology had been unable to agree on when life began and that, in any event, the law has never recognized a fetus as a person in the whole sense. At 158–162, 93 S.Ct. 705.

■ The circumstance that the argument presented to and rejected by the Supreme Court in *Roe* is presented again in the guise of a "factual" declaration by the Rhode Island legislature does not change the result in *Roe* or the obvious applicability of *Roe* here. The state through the passage of legislation, cannot establish a presumption which violates the constitutional rights of the persons affected by such laws, as the women of Rhode Island are affected here. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Carrington v.

Rash, 380 U.S. 89, 85 S.Ct. 75, 13 L.Ed. 2d 675 (1965); Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932).

As the Supreme Court stated in *Roe*, 93 S.Ct. at 731:

> "[W]e do not agree that, by adopting one theory of life [the state] may override the rights of the pregnant woman that are at stake. We repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman . . . and that it has still another important interest in protecting the *potentiality* of human life." (emphasis added)

A further indication that the issue has been conclusively determined against these Rhode Island statutes is given by the post-*Roe* action of the unanimous Supreme Court in refusing to reconsider its remand of the Connecticut abortion cases for further consideration in light of *Roe* and *Doe* [5] and in dismissing the

---

claim based on conception as the commencement of life. Rather, the Supreme Court rejected an inflexible analysis on its evaluation of state interests which would hinge on the acceptance or nonacceptance of the theory that human life begins at conception. In effect, the court lessened the burden of justification of the criminal abortion statutes. "Life" at conception did not have to be shown. The "potentiality" of life was sufficient to sustain the claim of the interests of the state beyond the protection of the mother. The ultimate holding of the Supreme Court in Roe v. Wade defined the parameters of these state interests and in doing so rejected the theory that the state's interests are "compelling" in the first trimester. The court weighed the state's interest during the first trimester in protecting the potentiality of human life and in safeguarding the health of the pregnant woman which in the light of history is not on delicate balance until after such period. In this first phase of pregnancy, the court held that the state, by adopting one theory of life, cannot override the constitutional right of privacy of the pregnant woman. In the second trimester, the court held that the state, in the promotion of the health of the mother, might regulate the abortion procedure. Only

in the last trimester was it held that the state's interest in the potentiality of human life became compelling to the extent that the state might proscribe abortions where not necessary to save the life of the mother.

5. 411 U.S. 940, 93 S.Ct. 1888, 1891, 36 L. Ed.2d 402 (1973). In the first Abele v. Markle, 342 F.Supp. 800 (D.Conn. 1972), a three-judge federal district court found unconstitutional a Connecticut statute which prohibited all abortions unless necessary to preserve the life of the mother or the fetus. One judge dissented, finding the purpose of the statute to be the protection of fetal life. Following this decision, the Connecticut legislature passed a new abortion statute which was the same as the original except that it declared it was the intent of the legislature to protect human life from the moment of conception. A second case was brought challenging the constitutionality of the new statute. In Abele v. Markle, 351 F. Supp. 224 (D.Conn., 1972), the three-judge court, one judge dissenting, held the new statute unconstitutional saying the State had *no* compelling interest in preserving fetal life in view of the widely differing views about the nature of that life. On February 26, 1973, the

appeal for want of a substantial federal question in Byrn v. New York City Health & Hospital Corp.[6]

Nor does the Rhode Island legislature have the power to determine what is a "person" within the meaning of the Fourteenth Amendment. Such a question is purely a question of law for the courts, independent of any power in the state legislature to create evidentiary presumptions. It has always been the Supreme Court that has given content to the term "person" under the Fourteenth Amendment. The argument of intervenors pointing to Supreme Court decisions based on state recognized interests in property misses the point that the Supreme Court exercises an ultimate, independent judgment about what "property" is property for purposes of constitutional protection. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Municipal Investors Ass'n v. Birmingham, 316 U.S. 153, 62 S.Ct. 975, 86 L.Ed. 1341 (1942); Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938). Furthermore, as amicus curiae has argued,[7] while the States have traditionally established a network of property and contract rights, they have not done so as to life, liberty or person. There is little reason to accept or give determinative weight to varying state versions of the existence or character of the rights at stake. Such issues are exclusively questions of Federal constitutional law. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

The Supreme Court has held in Roe v. Wade that a fetus is not a "person" within the meaning of the Fourteenth Amendment. As amicus to this Court, Professor Thomas I. Emerson, has so well stated, "Clearly the Federal courts must reserve ultimate authority to say what the meaning of the Fourteenth Amendment is. Surely the States could not, by legislative or judicial fiat, overturn the Dartmouth College case, 4 Wheat. 518, 4 L.Ed. 629 (1819), by finding that a charter was not a 'contract'; or overturn Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), by finding that the right to welfare benefits was not 'property'; or overturn Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), by finding that the right of parents to send their children to private school was not a 'liberty'; or overturn Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), by finding that black children were not 'persons'. If a Federal Constitution is to exist, these decisions must be made by the Federal courts."

It is sheer sophistry to argue as the defendant does that Roe v. Wade and Doe v. Bolton can be nullified by the simple device of a legislative declaration or presumptions contrary to the court's holding. Indeed it is a surprising attempt by one independent branch of gov-

---

Supreme Court vacated the appeal in the first *Abele* case as moot and vacated and remanded the second *Abele* case to the district court for reconsideration in light of Roe v. Wade and Doe v. Bolton, 410 U.S. 951, 93 S.Ct. 1417, 35 L.Ed.2d 683 (1973). Connecticut asked the Supreme Court to reconsider this ruling, arguing that the evidence it had presented demonstrated that a fetus is a human being from the time of conception. The Supreme Court refused to reconsider its ruling that the Connecticut statute should be considered in light of Roe v. Wade. 411 U.S. 940, 93 S.Ct. 1888, 1891, 36 L.Ed.2d 402.

On remand, a now unanimous three-judge court declared the Connecticut statute unconstitutional and enjoined its enforcement. Abele v. Markle (D. Conn. April 26, 1973).

6. 410 U.S. 949, 93 S.Ct. 1414, 35 L.Ed.2d 683 (1973). *Byrn* involved an attempt to invalidate New York's liberalized abortion law by arguing a fetus was a person within the meaning of the Fourteenth Amendment.

7. The Court would like to express its appreciation to Professor Thomas I. Emerson of the Yale Law School for his able assistance as amicus to the Court on this matter. Professor Emerson participated as amicus with the consent of all parties.

ernment to invade and assume the role of the other. The right of a state to declare an entity does not carry with it the judicial prerogative to determine the constitutional status of such entity.

 Finally, it must be said that the Supreme Court having ruled on this issue, its judgment is the law of this land. Under our scheme of government, it is the Supreme Court, not state legislatures, that ultimately determines the meaning of constitutional guarantees. Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60 (U.S. 1803); McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (U.S. 1819).

Because R.I.G.L. § 11–3–1 which prohibits the procuring, the counseling or attempting a miscarriage except when necessary to preserve the woman's life cannot survive a constitutional attack, § 11–3–2 and § 11–3–3, being integrally interwoven with it, must also fall. It is clear that the "conclusive presumption" of § 11–3–4 is also foreclosed by *Roe* and that § 11–3–4 must fall. Section 11–3–5, the savings clause, having nothing to operate upon, it too must be void.

 Plaintiffs have moved that this be certified as a class action. The class is properly composed of all women who are now or may hereafter be prevented from obtaining a legal abortion in Rhode Island because termination of their pregnancies is not necessary to preserve their lives. The class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the representative parties are typical of the claims of the class; and the representative parties will fairly and adequately protect the interests of the class. Defendant has acted on grounds generally applicable to the class, thereby making appropriate declaratory relief to the class as a whole. Fed.R.Civ.P. 23(b)(2). This shall be certified as a class action.

Defendant, the Attorney General of Rhode Island, has represented to the Court that he will respect a declaratory judgment rendered against this criminal abortion statute and, should it be declared unconstitutional, not commence prosecutions under it.

It is hereby declared, adjudged, and decreed that the Rhode Island criminal abortion statute, R.I.G.L. §§ 11–3–1; 11–3–2; 11–3–3; 11–3–4; and 11–3–5 (73–S 287 Substitute A) is on its face in violation of the Constitution of the United States.